Good morning, Your Honors. My name is Francisco Ugarte. I'm with the Office of Public Defender of San Francisco. I'm here representing the petitioner, Virgilio Alvaro Arcos, who's been in custody since February 2016. His partner and his daughter are here in the courtroom. I'd like to reserve three minutes for rebuttal. Your Honors, there are two issues, key issues in this case, one relating to the one-year bar and the second relating to the unwillingness and inability standard. I'd like to go right to the inability and unwillingness standard because that issue goes to both claims for relief, asylum, and withholding of removal. I think this case poses the important question to this Court of what an applicant who suffered lifelong, powerful racism culminating in a brutal and violent incident of racial persecution needs to show to establish that the government, Mexican government, is unable or unwilling to control his persecutors. And there's no dispute on this record that Mr. Alvaro suffered persecution. And the key question, I believe, here is whether substantial evidence compels this Court to reverse the BIA's holding. I think we can start first with the four corners of the BIA and I.J. decision, which held that the Mexican government was significantly hindered in its ability to protect indigenous people due to lack of resources, high levels of corruption, and racism towards indigenous people. There's a reason why the BIA and the I.J. held that. It's because the country conditions established that. And I'd like to point to page 825 of the record of the State Department report, which finds that human rights abuses against indigenous people is a significant problem and that impunity for human rights abuses remained a problem throughout the country with extremely low rates of prosecution for all forms of crime. Madrigal and Bringas not only look at the government's ability to control private actors, but they also look at the government's affirmative persecution against the disfavored group. And I think while most of the briefing is focused on the government's inability, unwillingness to control private actors, what we haven't been focusing on is the government's persecution of indigenous people, whether it's putting false charges on indigenous leaders, whether they're ---- Robertson, there evidence in the record of that point? Yes, Your Honor. On page ---- both in the State Department report and page 1070 in an article, page 1070 describes a 2014 incident where police fired guns at night, scaring people during a land dispute, burning down the home of campaign headquarters for indigenous people. Dr. Fadish testified that Chiapas' heavily militarized police officers known to receive benefits, certain political players to abuse people, engaged in physical violence, intercommunity conflicts. We also have Mr. Alvaro's own testimony where the police falsely accused someone from his community of murder and then tortured him. And the community literally set up barriers so the police couldn't come into the home. We also have a situation where the police didn't ---- did not investigate the arson of Mr. Alvaro's own home. Mr. Alvaro also testified, why are you afraid? Well, and I think his words specifically were, it may seem odd for me to mention this, but basically it's the truth. Basically, I'm afraid of authorities because we're targets of authorities. For example, let me give you an example. If someone's killed, they look for a scapegoat, someone they can blame. They can focus on us who are indigenous and poor and have no one to defend us. That's not in isolation. That is consistent with the country condition evidence that we've presented. I'd also like to add that when ---- Kagan. Can you address the fact that in this case that the police assisted Mr. Alvaro Arcos at some point? They took him to the hospital and took a police report, I believe. Yes. They assisted Mr. Arcos when he was injured. AFRI addresses the issue of when a police officer does provide menial assistance to an individual, but where overwhelming country condition evidence shows that there was a lack of resources establishing, in that case in Ghana, the country's inability and unwillingness to control. Here, that is the only evidence that the IJ and the BI relied on to show that the entire Mexican government is willing and able to protect indigenous people. And if you balance that episode, there's no evidence of a prosecution. They certainly didn't protect him from persecution. And if you look at his lifelong discrimination and the racism that he suffered, that incident is simply overwhelmed by the remaining evidence that shows the Mexican government is unable and unwilling to control. Rampant impunity for prosecutions in Mexico. We have the Amnesty International report. The government, the Mexican government has not taken concrete measures to achieve this, and it continues to deny the true scale of human rights problems facing the country. Indigenous peoples continue to be routinely denied access to justice. And again, this report, if you look at AFRI, a police officer did take a report, but was unable to control the persecutors because of a lack of resources. Interesting, in AFRI, that involved Muslim extremists attacking a Christian minister. But Ghana, at the time, was Christian-dominant, and the police force was Christian-dominant. Here, the opposite is the case, where the Mexican government has a long history of warring with indigenous people, a long history of racism that even the IJ and BIA recognized. And so if you balance those two things, this one-time incident with the entirety of the record, I think the case is quite clear on that issue. I'd like to address the one-year bar. Your Honor, the first issue as to the one-year bar is whether this Court has jurisdiction. And there are, of course, jurisdiction-stripping provisions in the INA that precludes the Court from dealing with the one-year bar issue. However, in a key case, both Ramadan and Hussiev, they both held that where the underlying facts, there is no dispute of the underlying facts that give reason for the delay, this Court has jurisdiction, because the reasonability analysis of the extraordinary circumstances prong is a legal question for this Court to consider. This Court ---- Breyer. The ultimate conclusion. I'm sorry. The ultimate conclusion is a legal determination. That is correct. And the Court need not go beyond page 23 of the government's brief in determining what the actual dispute is, because I think the government rightfully acknowledges that the reasonableness determination is the dispute. There's no dispute of all of the facts that led up to the delay in the asylum application. Mr. Alvaro is a mentally disabled person. There's no dispute about that. There's no dispute that, in addition, he was able to maintain employment and be the head of the household. There's no dispute about that. There's no dispute he testified that he was unaware of the deadline. But if you look at the totality of the circumstances, the substantial evidence establishes that someone with post-traumatic stress disorder and borderline intellectual functioning should not be charged with the responsibility akin to a minor of applying for asylum. Well, as I understood the ---- I guess it's the BIA. I can't remember now. But that ---- didn't they assume that his condition would ---- could qualify as extraordinary circumstances? Yes. That is exactly it. And they then went to the next question, which was whether 10 years ---- That's true. ---- in filing the application was reasonable. That is exactly correct. Yes. That's exactly it. And they concluded that the 10-year gap is just unreasonable. Absolutely. That's exactly what the BIA held. At the same time, we're looking at you have to look at the facts of all facts and circumstances in the case. Mr. Alvado is legally disabled. The psychologist presented a report talking about his phobic response. If you even look at his testimony, why didn't you mention, why don't you talk about it, because it hurts. I don't like to remember these things. Now, we can debate about what the actual cognitive functioning of Mr. Alvado is, but the INA, the Congress, has stated that minors don't need to apply for asylum until they're 18 because until they reach the age of majority. Here, we're talking about someone who is mentally disabled. And so 10 years, of course, Your Honor, if I were here in a normal situation, 10 years is a very long time. But this is someone who is mentally disabled. And I believe that the record compels a reversal on that issue. You want to save your – you said you wanted to save some time for rebuttal. Thank you, Your Honor. Let's hear from the government. May it please the Court, my name is Nilam Isinol and I represent the U.S. Attorney General in this matter. I'd like to just begin by addressing the one-year deadline issue. Petitioner began his argument by asserting that the one-year issue is dispositive of both – I'm sorry, the unable and willing requirement is dispositive of both asylum and withholding of removal. But because the agency only addressed unable and unwilling in the context of the withholding of removal application, which has a higher standard of proof, clear probability, as opposed to a well-founded fear, the unable and unwilling requirement is not dispositive of also asylum in this case, due to asylum having a lower standard. And so we do have to address the one-year deadline issue for purposes of Mr. Alvaro's asylum application. The government's position is that the Court lacks jurisdiction because there is a dispute, a factual dispute underlying the extraordinary circumstances claim. The government disputes the level of impairment that Mr. Alvaro faces as a result of his mental health issues and cognitive problems. In the agency decision, you see the Board and the immigration judge making a factual analysis as to Mr. Alvaro's functioning, taking into account what kind of responsibilities and activities he was able to carry out during the 10-year delay and determining whether or not that delay was reasonable or not. Petitioner suggests that this Court's decision in Hosea makes reasonableness a question of law. It is true that ultimately it's a question of law. But there, the Court stressed that it had jurisdiction to review because the underlying facts were not disputed. That means in a case where facts are disputed, reasonableness is a question that the Court cannot review.  But if it's disputed, other than the government saying, we dispute that, what is the competing evidence? You know, usually when there's a dispute of fact, you look, there's one version here and there's one version on this side, and the trier of fact resolves the dispute after applying credibility and, you know, all the standard tools that a trier of fact would use. Well, it all comes down to, I think, a factual question, which is how was he affected by his mental disorders and his cognitive, his intellectual functioning? And so that is a factual question. Also, when he testified, he did... Well, so, you know, his counsel stood up there and said, it doesn't seem to be that the petitioner was able to help his family, came to Breadwinner, worked, assisted with one daughter who had some emotional problems, helped one daughter with her schoolwork and was the father figure. What else? He retained counsel in his DUI matters. And then, so the BIA then looks at all of that and the 10-year gap, the 10 years with nobody disputes that, and the BIA, the board says, you know, 10 years is just unreasonable. I think the fact... Why isn't that just a question of law? Whether those facts add up to unreasonableness. The fact that I did hear my opposing counsel mention competence. There was no, you know, he was at the immigration judge level when competency can be raised. Incompetency can also be raised. There was no attempt to put Mr. Alvaro into the box of competence. And so there is a suggestion here that, you know, he simply, his level of functioning is at issue. You know, he has these disorders, but they're not so severe that he's incompetent. It's not so severe, as the immigration judge found and the board found, that that 10-year delay makes sense. And so that is a factual question in the government's view. I would also argue, though, in the alternative, substantial evidence. If the court does find jurisdiction, substantial evidence supports the agency's finding. The 10-year delay simply doesn't make sense in Mr. Alvaro's case due to how much functioning he displayed during that 10-year period. Whereas, you point out, he was able to, among other things, navigate the criminal justice system with the assistance of a lawyer, just as he could have done in bringing forth an asylum claim in a timely manner with the assistance of an immigration attorney. I also want to argue that the agency's unwilling and unable holding is also supported by substantial evidence. Under that standard, the court can only reverse if it believes that no reasonable fact finder could have found, as the agency did. That's quite a high standard, and Mr. Alvaro tries to go around it by arguing that there is legal error here to the extent that the agency, in his opinion, conflated inability and unwillingness. He draws comparison to the first circus decision in Rosales-Justo, which is a very distinguishable case compared to this one. In that case, the petitioner was the victim of extortion threats in Mexico by organized crime, and his child was murdered by members of a criminal organization. The police were very much investigating the crime, but he also produced significant evidence that organized crime is a problem that has not been addressed sufficiently by the Mexican authorities. In the board's decision in that case, the board did not address inability at all. It simply focused on the willingness of the Mexican police to investigate this crime. The board has not done that here in this case, where it has not exclusively focused on willingness. If we look at the board's decision, it states, quote, on page 5 of the record, while an alien's ability to file a police report suggests that the police were willing to protect him, it may say little about whether they are able to do so. And so the board is explicitly recognizing here that it can't just rely on proof of willingness. It also has to examine the issue of inability. Therefore, it turns to the country conditions evidence and looks at whether or not Mr. Alvaro has shown that the Mexican authorities are unable to control persecution as the type he suffered. Now, the agency's analysis of the country conditions on this point is a bit confusing. Opposing counsel has pointed out the language in the board's decision. The Mexican government has taken steps to protect the indigenous population, but it has been significantly hindered. That's because the government seems to have a hand in some of the corruption that takes place in this particular state. If you're referring to Chiapas, the persecution that Mr. Alvaro has focused on for purposes of his brief were all incidents that took place outside of Chiapas State. He left Chiapas at age 13 or 14, and at that point he moves to other states in Mexico where he encounters discrimination in employment as well as the most serious incident, that attack in Progreso. But when it comes to Chiapas, respectfully, the country conditions evidence, which does show the significant harms and mistreatment of the indigenous community in that state in terms of also a longstanding conflict there, it isn't as relevant to Mr. Alvaro's case as he would like it to be. He has not shown that the government of Mexico is unable or unwilling to control persecution akin to the type that he suffered, which was serious physical violence at the hands of private actors. In his opening brief, he discusses the fact that he is trying to put his case under the bring us prong for unable or unwilling requirement, that he has shown private persecution is widespread and well known but not controlled by the government. But he hasn't made that showing here. There is nothing in the record evidence, the substantial certified administrative record of 1,200 pages, that documents that Cholmayans are subject to serious physical attacks as he was on a widespread and well-known basis or that the Mexican authorities are unable to address these types of crimes. We simply actually have no evidence about police responsiveness in this record. That's why we see the board and the immigration judge focusing so much on what the police officer did in his case. In his own situation, there was a follow-up investigation? There isn't any evidence because Mr. Alvaro has not put forward that evidence. I don't know what happened to that investigation. You're right, but there isn't anything in the record that tells us what happened because Mr. Alvaro, who has the burden of proof with regards to the unable and willing requirement, he hasn't put forward that evidence. Again, I just want to emphasize why we see so much the agency focusing on that police report. It's because it's the only evidence that the agency has as to how police in Mexico would respond to the type of harm that Mr. Alvaro suffered. There's nothing in the record to help him. That is why the agency talks about the fact that here the police took Mr. Alvaro's investigation by writing up a complaint and certainly applying substantial evidence review. There is no record evidence that compels the conclusion that Mexican authorities are unable to protect victims of the persecution that Alvaro experienced. Respectfully, AFRIE, I am hopefully pronouncing that correctly, that decision is an apposite because although the agency was reversed in terms of focusing exclusively on the ability of the Ghanaian police to address the persecution experienced by Petitioner because they were willing to write up a police report, there was also significant and individualized evidence in that case about the Ghanaian police forces being unable and unwilling to protect the Petitioner and others like him. There the police station had only one gun for the entire station. People in AFRIE's church group who had been murdered, their crimes were left apparently uninvestigated and certainly unsolved. And the police required bribes before they would provide their services. So this is not a case like AFRIE that is at all comparable to AFRIE. Unless there are further questions, I would just like to conclude the court should uphold the agency's denial of asylum and withholding on the basis that there is no jurisdiction over the extraordinary circumstances reasonable in this inquiry here. The agency did not commit legal error in its unable or unwilling holding. And its factual findings on the unable and unwilling issue are supported by substantial evidence. I just have one last question for you, which is if we were to disagree with you, what's the result? It goes back to the board for the board to then consider whether the government can rebut the presumption? Because he's trying to get the presumption of past persecution. There was a showing that, let me think this through, because he did have the showing of the harm rising level of persecution, but he just couldn't show unable or unwilling. So I think it has to go back. He would then get the presumption that if he were to go back, he would be subject to the likelihood of persecution or whatever the standard is under withholding. Yes. I'm sorry. I'm also remembering that the immigration judge denied the withholding claim because of internal relocation and because he could not show an individualized risk of harm for purposes of his claim of future persecution. But the board didn't address those? The board did not address that. So it's appropriate to remand so the board can address that in the first instance. Okay. All right. I have one additional question. So, Counselor, what is your authority for your assertion that the Ninth Circuit does not have jurisdiction if there are disputed facts? Well, I think Hussayev is authority, because although the Court found jurisdiction there. That says the opposite, though. I mean, that there is jurisdiction if there are undisputed facts, right? But it doesn't say that there is no jurisdiction if there are disputed facts, correct? It does say that, though, in my opinion, because they make clear in Hussayev that the facts were not in dispute. They point out that because he his adverse credibility determination was not challenged, there were only a limited number of facts for the agency to look at in terms of analyzing the one-year bar. And they put so much, I think, of a stress on the fact that there was not a factual dispute in that case. But also our brief mentions the Gasparian case, which is the petitioner there argued that her PTSD, post-traumatic stress disorder, was an extraordinary circumstance that excused her failure to comply with the one-year bar. But there was contradicting evidence about, you know, whether her language abilities and her lack of funds also contributed to her failure to comply with the one-year deadline. And so there was a factual dispute, and the Court said that there was no ability to review. I just also want to point out that Mr. Alvaro, in his testimony, he did not testify to the fact that his psychological disorders and cognitive problems were the reason for why he failed to comply with the one-year deadline. He actually, he merely indicated that he was unaware of the one-year deadline requirement until his immigration lawyer told him about it. And so there's, you know, another fact in play, whether or not it was lack of knowledge that contributed to his failure to comply with the one-year deadline. And thank you very much. Thank you. Thank you for your argument. Okay. I believe there's some rebuttal time. Thank you, Your Honors. Just briefly, the government said there's no evidence of countrywide failure of the Mexican government to control racist persecutors, and that's just not true. On page 825 of the record, the U.S. State Department report, a significant human rights-related problem or threats and violence against some members of indigenous community, impunity for human rights abuses remains a problem throughout the country with extremely low rates of prosecution for all forms of crime. The Amnesty International report, again, indigenous people continue to be routinely denied access to justice. The FADASH testimony on page 340, the Mexican government doesn't have resources to protect the indigenous population. The record at 1070, an article, again, where an indigenous person was attacked in Chiapas. In this Court's decision in Mashiri v. Ashcroft at 383 F3D1112, the Court held that an applicant can meet the burden of unwillingness and inability to control, need not be on a countrywide basis, but can make that determination in their home city or area. And I think the government is confounding. We don't have a burden to show every single location in Mexico. We have a burden to show that it was unwilling and unable to protect him. And the government was unwilling, excuse me, was unable to protect Mr. Alvaro. Then just very briefly on the one-year bar, Mr. Alvaro and the psychologists were deemed credible. Their testimony were taken as credible. Mr. Alvaro did say he was unaware of the asylum application, and that is why he wanted his explanation for his failure to apply. But he can't be charged with the responsibility of understanding a complex concept of his own mental condition that was diagnosed by a neuropsychologist. And rather than focusing on, well, 10 years, because of course 10 years would be unreasonable, what the Court should and what the BIA and the IJ focused on, should have focused on, is his serious cognitive functioning. And as to the proper standard, Your Honor, I did mention that the standard could be de novo, but I also believe for unwillingness and inability, I do believe substantial evidence is the standard that the Court has applied pretty uniformly other than in Madrigal, but I think that we went on the substantial evidence standard. I'd just like to conclude that Mr. Alvaro has been detained for 1,322 days. When asked why he was afraid to return to Mexico, he testified, because in Mexico, I've never had a place that was safe for me. I ask the Court to consider the totality of the evidence, the illogic of the BIA and the IJ decision, and grant this petition for review, and order that Mr. Alvaro be granted asylum or to be released. I do agree with you, I'd have to go back to the BIA for the BIA to reach all the other issues. I believe that's true, Your Honor. All right. Thank you, Ken. Thank you for your arguments. The matter is submitted at this time.
judges: Fernandez, Paez, Choe-Groves